**In re VANGUARD OIL & SERVICE CO., INC., Debtor.**

**APEX OIL COMPANY, Appellant,**

**v.**

**VANGUARD OIL & SERVICE CO., INC., Bayside Fuel Oil Corp., Freedom National Bank, Chemical Bank, Committee of Unsecured Creditors, Ekloff Marine Corp., The Belcher Company of New York, Thomas Itin, Appellees.**

**Nos. 184–41608–260 (CBD), CV 87–2982.**

United States District Court,
E.D. New York.

June 14, 1988.

---

9. See note 7, *supra.*

Simpson & Levitsky, Brooklyn, N.Y., for Vanguard Oil & Service Co., Inc.

Alfred Polizzotto, Brooklyn, N.Y., for Bayside Fuel Oil Corp.

Lawrence Mittman, Battle, Fowler, Jaffin & Kheel, New York City, for Freedom Nat. Bank.

Donald F. Mooney, New York City, for Apex Oil Co.

Beck, Halberg & Williamson, New York City, for Eckloff Marine Corp.

Frank Leavitt, The Belcher Co. of New York, Hasbrouck Heights, N.J., for The Belcher Co. of New York.

Robert Rubinger, New York City, for Thomas Itin.

Mark Lebow, Coudert Brothers, New York City, for Committee of Unsecured Creditors.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

On October 16, 1984, Vanguard Oil & Service Co., Inc. (the "Debtor") filed its voluntary bankruptcy petition pursuant to Chapter 11 of Title 11 of the United States Code. At that time, the Debtor's principal business was the sale of fuel oils, crude oil and other petroleum products.

Among the Debtor's assets is a parcel of real property known as and located at 1045 Atlantic Avenue, Brooklyn, New York, where the Debtor constructed its headquarters, office building and garage (collectively referred to as "the real property").

On December 4, 1984, the Bankruptcy Court appointed an Official Committee of Unsecured Creditors (the "Committee"), consisting of representatives of Apex Oil Company ("Apex"), Bayside Fuel Oil Depot Corp., ("Bayside Depot"), the Belcher Co. of New York and Ekloff Marine Corp.

The Committee was aware that the real property was built for the Debtor's special use and located in the economically depressed Bedford–Stuyvesant area of Brooklyn. The Debtor's, financial statements indicated the total value of all its real property, which included other Brooklyn, New York and Newark, New Jersey properties[1] in addition to the 1045 Atlantic Avenue property, was approximately $1.5 million dollars. (Exhibit A at p. 22. 60; Mtima Affidavit at ¶ 2).

Appellant Apex is a judgment creditor of the Debtor in the amount of $1,297,814.73, and has a judgment lien on the real property and improvements thereon.

Prior to the sale, which is the subject of this suit, the real property had been marketed through Real Estate brokers for over a year before the Debtor accepted an offer from W.W. Owner's Corp. ("W.W.") to buy the real property and personalty therein for $275,000, "subject to any higher or better offer."

On June 23, 1987, by Order to Show Cause, the Debtor applied for authorization from the Bankruptcy Court to enter into a contract of sale with W.W. for the sale of the real property for $275,000, the highest offer received as of that date. Counsel to the Committee and Apex, however, objected to the proposed sale based on the previous statements of the Debtor which seemed to indicate that the value of its real property was $1.5 million. Additionally, there was confusion over the existence of a $475,000 mortgage issued in 1981 by Freedom National Bank ("Freedom"). The price differential between the prior valuation of the real property and that called for in the contract of sale to W.W. caused counsel to the Committee to oppose the intended sale.

In response, the Debtor clarified the information in its financial schedules, stating that the $1.5 million valuation of its real property included its business headquarters and all other real property owned by the Debtor.[2] Additionally, Freedom informed the Committee that the 1981 construction mortgage was not based upon an appraisal value of the real property, but was part of Freedom's minority business loan program. The loan was partially secured by separate collateral pledged by the

---

1. Specifically the Debtor owned buildings situated at 1255 Atlantic Avenue, Brooklyn, New York and at 40 Lafayette Street, Newark, New Jersey.

2. See footnote 1.

Debtor's principal. (See Exhibit A at p. 60). Acting on this information and the absence of any higher offers for the real property and personalty since the real property had been offered for sale, the Committee decided that W.W.'s offer was reasonable.

The Debtor then informed the Committee that it would also be necessary for it to sell its # 4 and # 6 fuel oil business in addition to its # 2 fuel oil business. An affiliate of Bayside Depot, Bayside Fuel Oil Corp. ("Bayside"), which had contracted to purchase the # 2 fuel oil business for $875,000 then offered an additional $75,000 to purchase the # 4 and # 6 oil businesses, plus $300,000 for the real property and $100,000 for the furniture.[3] Since the Debtor's only other offer for the real property and the furniture was $275,000, and since there were no objections to the sale of the fuel oil businesses, the Committee recommended to the Bankruptcy Court that the sale to Bayside be approved. (Exhibit A at p. 49). Because Bayside would not purchase the assets separately, the Bankruptcy Court authorized the Debtor to accept Bayside's offer in its entirety.

On August 17, 1987, the closing date on the real property, Apex moved before the Bankruptcy Court for a stay of that portion of the August 11, 1987 orders that permitted conveyance of the real property. Apex submitted an appraisal which showed the real property to have a value between $1,112,250 and $1,483,000. After a hearing, the Bankruptcy Court denied Apex's motion because the appraisal was conditional, failed to consider comparable properties in the Bedford–Stuyvesant area and ignored the special use characteristics of the real property. (Exhibit R at pp. 39, 40, 43, 45–46). Consequently, the closing took place and title to the real property was conveyed to Bayside. On August 18, 1987, Apex sought a stay of the same August 11th orders from the United States District Court, Eastern District of New York. The motion was denied as moot because the

sale to Bayside had already been consummated.

Apex now appeals to this Court to reverse the sale of the real property to Bayside alleging: (1) Bayside was not a "good faith purchaser" of the real property; (2) the sale violated Apex's Due Process Rights and; (3) the Bankruptcy Court erred in allocating the sum of $300,000 as the price of the real property from the total price of $1.2 million for all the assets sold to Bayside.

Appellant's basis of jurisdiction is Title 28 U.S.C. § 158.

■ Under Section 363 of the Bankruptcy Code, a party appealing an order authorizing the sale of a debtor's assets must obtain a stay of the sale pending appeal or risk the appeal becoming moot if the property is sold before the appeal is heard. 11 U.S.C. 363(m) provides in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

It follows therefore that where a party appeals from an order authorizing a sale under § 363 and fails to obtain a stay of that order, the appeal is rendered moot with respect to a purchaser who closed in good faith. *Matter of Youngstown Steel Tank Co.*, 27 B.R. 596 (D.C.P.A.1983). Apex's application to the Bankruptcy Court for a stay of the sale of the real property to Bayside pursuant to § 363(m) was denied. Apex made no request for a stay pending appeal and, subsequently, the sale of the real property to Bayside occurred. This Court finds that because the appellant failed to secure a stay of the approved sale pending appeal and because the real prop-

---

**3.** The final $1.2 million purchase price resulted from negotiations relating solely to the oil busi-

nesses.

erty was sold to a good faith purchaser, Apex's appeal is moot.[4]

■ Appellant first argues that Bayside was not a good faith purchaser of the real property and therefore the sale should be reversed.

We disagree, a good faith purchaser, within the meaning of Bankruptcy Code 11 U.S.C.A. § 363(m), is "one who purchases the assets for value, in good faith and without notice of adverse claims." *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir.1985). Bayside paid value for the real property and acted in good faith when it outbid "W.W." at the auction.

■ Knowledge on the part of the purchaser of the pending appeal does not affect the application of 11 U.S.C. § 363(m), *Matter of Youngstown Steel Tank Co.*, 27 B.R. 596, 598 (W.D.Pa.1983), and therefore does not constitute "notice of adverse claims." Thus, we find that Bayside was a good faith purchaser.

■ Appellant's argument that a purchaser pays "value" only if it pays at least seventy-five percent of the appraised value of the sold assets is unpersuasive. The Bankruptcy Court properly ignored Apex's submitted appraisal for the real property because the appraisal failed to consider the real property's special use characteristics and comparable real estate values in the area. Furthermore, even if the Apex appraisal had been complete, "[a] favorable appraisal without a corresponding actual purchaser cannot be allowed to stymie a Bankruptcy Court as it attempts to decide expeditiously matters before it." *Willemain v. Kivitz, supra* at 1023, n. 7.

## II

■ Apex's second claim is that the sale violated Apex's due process rights under Article V of the U.S. Constitution.

We disagree. The requirements of due process of law are: "... notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action...." *National Ass'n for Advancement of Colored People v. Wilmington Medical Center, Inc.*, 453 F.Supp. 330 (D.C.Del.1978), and the "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

■ Although appellant alleges various due process violations, appellant fails to demonstrate how it was materially prejudiced. In its motion papers, Apex admits to having had notice in fact[5] by the Bankruptcy Court's actions. Furthermore, in *Matter of General Insecticide Co., Inc. v. Bankrupt*, 403 F.2d 629 (2d Cir.1968), the Second Circuit held that absence of notice to the creditors of a private sale was not a sufficient ground for setting aside a bankruptcy sale. There, the Court found that if an advantageous sale would be lost or if the property to be sold would substantially depreciate in value during the notice period, the notice requirement for a private sale from a bankrupt estate could be dispensed with. *Id.* at 630. In the present case, due to the seasonal nature of the Debtor's business, Bayside conditioned its offer upon immediate acceptance. A delay in accepting Bayside's offer arguably risked decreasing the value of all the assets involved in the Debtor's estate. Therefore, in approving the sale of the real property despite appellant's objection to improper notice, the Bankruptcy Court acted within its discretion as enunciated in *General Insecticide*. Apex had an opportunity to contest the sale or bid, yet it appeared at the sale and failed to object. For the foregoing reasons, we find Apex's due process claim unpersuasive.

## III

In its final ground for appeal, Apex alleges that the Bankruptcy Court erred in allocating the sum of $300,000 as the price of the real property from the total price of $1.2 million for all assets sold to Bayside.

---

4. See *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir.1985).

5. See Appellant's Brief on appeal from final orders of the United States Bankruptcy Court for the Eastern District of New York p. 37.

■ Again, we disagree. A Bankruptcy Court sits as a court of equity and its proceedings are inherently proceedings in equity. *Local Loan Co. v. Hunt*, 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934). It is within the discretion of the Bankruptcy Judge whether to approve a trustee's proposed sale of property of the estate. Underlying this determination are factors concerning the integrity of a trustee; sale; and the preservation of and the best interest of the estate. *In Re Alves*, 52 B.R. 353 (Bkrtcy.D.R.I.1985).

■ Here, Bayside made its offer for the real property, the furniture and the # 2, # 4 and # 6 fuel oil businesses after the Debtor announced its intention to sell its remaining oil business. Exhibit B at pp. 39, 44. "W.W." elected not to top Bayside's bid for the real property and furniture when the Bankruptcy Court offered it for sale separate from the fuel oil business. In determining the best interest of the estate, the Bankruptcy Court had to consider that: (1) In over ten months of marketing attempts, the second highest offer made for the real property and personalty was for $125,000 less than Bayside's accepted offer; and (2) due to the seasonal nature of the Debtor's business, Bayside conditioned its offer upon immediate acceptance and prompt access to the Debtor's client list. Because no higher offer for the real property was forthcoming and because a delay in accepting Bayside's offer risked decreasing the value of all the assets involved in the estate, the Bankruptcy Court acted within its discretion in approving the sale of the real property to Bayside.

In conclusion, this Court finds appellant's arguments without merit. Because Bayside was a good faith purchaser of the Debtor's real property and appellant failed to obtain a stay of sale pursuant to 11 U.S.C. § 363(m), appellant's appeal is rendered moot.

SO ORDERED.