**In re J.B. WINCHELLS, INC., Debtor.**

**Bankruptcy No. 87–00575F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 13, 1989.

Robert K. Coulter, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., Virgi-

nia Powel, Asst. U.S. Atty., Local Counsel, Philadelphia, Pa., for the I.R.S.

Douglas H. Weiss, Pincus, Dubroff, Ganz, Lightman & Weiss, Philadelphia, Pa., for debtor, J.B. Winchell's, Inc.

Gary A. Friedberg, Goldstein, Friedberg, Kelly & DiVito, P.C., Philadelphia, Pa., for Rich Aaron's Gallery, Ltd.

David A. Pollack, Rosenwald, Pollack & Grumfeld, Philadelphia, Pa., for Rouse–Philadelphia, Inc.

James J. O'Connell, Asst. U.S. Trustee, Philadelphia, Pa.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

The federal government has brought what it denominates a "Renewed Motion Pursuant to Rule 9024," which seeks to vacate an "Order Approving Modified Stipulation," which was entered by this court on April 28, 1988. The parties to that original stipulation—J.B. Winchells, Inc. (the debtor), Rich Aaron's Gallery, Ltd. ("Aaron's") and Rouse–Philadelphia, Inc.—then agreed, in pertinent part, to the debtor's transfer of its interest in a liquor license to Aaron's. The modified stipulation allowed Aaron's to take the license free and clear of any liens, including that of the federal government.

The government filed its instant motion on November 7, 1988.[1] It presents two grounds for the vacation of the April 28, 1988 order: that the stipulation was in actuality a contested matter, and the government was not afforded proper notice of this matter; and that the court was misled into believing that Aaron's possessed a secured interest in the license which in fact, according to the government, it did not.

The parties now before me have collectively submitted a number of exhibits and

---

1. More precisely, the United States initially filed a motion to vacate the April 28, 1988 order on September 8, 1988. Upon the debtor's assertion that the initial motion contained several procedural defects, the United States filed this "renewed" motion.

have stipulated to the following facts for purposes of resolving this motion.[2]

## I.

On or about July 29, 1985, Aaron's made a loan to the debtor in the principal amount of $275,000.00. The loan was secured by a Security Agreement between the parties on that date, and by three financing statements. The loan was specifically secured, *inter alia,* by the debtor's restaurant liquor license. The financing statements were recorded in Philadelphia County in the Recorder of Deeds Office and the Prothonotary's Office on August 14, 1985, and in Harrisburg with the Secretary of the Commonwealth on August 16, 1985. These financing statements were submitted by the parties as Exhibit 1.

The Internal Revenue Service filed notices of a federal tax lien against the debtor on January 6, 1987 and April 1, 1988 in Philadelphia, Pa. Exhibit 2.

The debtor filed a voluntary petition in chapter 11 bankruptcy on February 4, 1987. The debtor's petition (with attachments) and bankruptcy schedules and statement of financial affairs comprise Exhibits 3 and 4. The IRS filed a proof of claim (Ex. 5) on June 22, 1987, alleging a secured claim of $24,730.52, unsecured priority claims of $4,919.92, and an unsecured general claim of $394.01.

On September 18, 1987, the debtor moved for the court's approval of a stipulation by and among three parties: the debtor, Aaron's, and Rouse–Philadelphia, Inc., which provided: that the debtor would withdraw its then pending motion to assume its lease on the restaurant premises;[3] Rouse would be granted relief from the stay and be allowed to take possession of these premises; and Aaron's would be allowed to take possession of the debtor's furniture, fixtures, equipment and liquor license, in which "Aaron's has a perfected

security interest." Ex. 6. A notice of this motion for approval of the stipulation was filed in the bankruptcy clerk's office on or about September 23, 1987, stating that the notice was served "upon all creditors and parties having filed requests to receive notices in this matter pursuant to Bankruptcy Rule 2002...." Ex. 7. The debtor certified to the court on October 20, 1987 that it had not received any objections to its motion. My order approving the stipulation as unopposed was entered October 22, 1987 (Ex. 9); shortly thereafter, on October 28, the debtor's bankruptcy case was dismissed under 11 U.S.C. § 1112(b) for failure to propose a plan and for failure to either prosecute the case or to file required documents in a timely fashion. Ex. 10.

Approximately five months later, on March 29, 1988, the debtor filed a motion with this court seeking an order approving a modification of the approved stipulation pursuant to Bankruptcy Rule 9024 or, in the alternative, to reopen the case. The basis for the proposed modification was the debtor's representation that the agreement reached by the three parties included Aaron's right to take the debtor's furniture, fixtures, equipment and liquor license free and clear of liens and encumbrances. It was alleged that before the stipulation was reduced to writing, the debtor's attorney primarily responsible for these negotiations became incapacitated and was unable to finalize the matter, and that final negotiations and the actual drafting of the stipulation was handled thereafter by another attorney in that firm, one less familiar with the agreement. Because of these circumstances, the motion stated, the approved stipulation failed to include the fact that Aaron's was to take back the debtor's assets free and clear of all liens and encumbrances. Ex. 11.

On March 29, 1988 I entered an Order Requiring Answer in connection with this

---

**2.** They also agree that I should reopen this closed bankruptcy case, under 11 U.S.C. § 350(b), in order to render a decision on the instant motion.

**3.** A lease agreement between Rouse and Aaron's for this commercial space in the Gallery at

Market East Shopping Center in Philadelphia was assigned to the debtor on August 2, 1985. At some point prior to the stipulation, the debtor had terminated the operation of its business and was unable, therefore, to assume the lease. *See* Exs. 6, 9.

motion. A hearing on this motion was scheduled for April 15, 1988; a Certificate of Service filed with the court on March 31, 1988 shows that the motion was mailed to, *inter alia,* the Internal Revenue Service's Special Procedures Staff in Philadelphia. *See* Exs. 12, 13, 14. The address to which the notice was sent is the one the IRS used on its proof of claim against the debtor. Ex. 5.

On April 13, 1988 the parties to the stipulation filed an amended Motion for an order approving their stipulation. Ex. 15. The only difference in language between the March and April modified stipulations involves Aaron's authorization to take possession of, *inter alia,* the debtor's liquor license. The March, 1988 motion reads that Aaron's is to take the "license free and clear of liens and encumbrances;" the April, 1988 motion states that Aaron's takes the "license free and clear of all liens, claims (including claims of any taxing authority, suits, demands and encumbrances ...)." *See* Exs. 14, 15. A certificate of service of the April 13 motion was filed April 15, Ex. 17, and a certificate of no objection was thereafter filed on April 22, 1988. Ex. 18.

On April 28, 1988 I issued an Order approving the modified stipulation, as amended on April 13, as unopposed. Ex. 19. Aaron's then assigned its interest in the liquor license to a third party named Nick's American Cafe of 9th Street, Inc. The assignment was filed with the Pennsylvania Liquor Control Board, Ex. 20, which apparently approved transfer of the liquor license to that third party on August 12, 1987. Stip. of Facts, No. 23. No evidence has been provided regarding the price Nick's paid for the liquor license, to whom it was paid, the value of the liquor license, or what connection, if any, existed between Nick's, the debtor, and Aaron's. (The government suggests that some principals of Nick's were creditors of the debtor. Memorandum at 15.)

## II.

The government argues that the April 28, 1988 order should be vacated under Rule 9024 (incorporating Fed.R.Civ.P. 60) on the grounds that the parties to the settlement misled this court by wrongfully asserting that Aaron's held a first priority security interest and, as a result, no party would be prejudiced by the settlement; it also contends that the government was not given proper notice of the motion to approve the amended settlement. As will be discussed below, the government complains only about that portion of the April 28 order which permitted the transfer of the liquor license free and clear of its liens. The government's motion is based specifically upon Rule 60(b)(1), (b)(3), and (b)(6).[4] A brief discussion of the boundaries of this rule will frame the government's request for relief.

First, I note that the provisions of Rule 60(b)(6) may be utilized only in exceptional or extraordinary circumstances, and can be used only as a "residual clause" in cases which are not covered under the first five subsections of Rule 60(b). If the government's argument is addressed by subsections (b)(1) or (b)(3), then it is not cognizable under 60(b)(6). *Wesco Products Co. v. Alloy Automotive Co.,* 880 F.2d 981, 983 (7th Cir.1989); *In re Salem Mortg. Co.,* 791 F.2d 456, 459 (6th Cir.1986); *Pierce v. U.M.W. Welfare & Retirement Fund,* 770 F.2d 449, 451 (6th Cir.1985), *cert. denied,* 474 U.S. 1104, 106 S.Ct. 890, 88 L.Ed.2d 925 (1986); *In re Watkins,* 90 B.R. 848 (Bankr. E.D.Mich.1988).

It also is well established that the burden rests upon the party seeking relief under Rule 9024 to show justification for its oversight, error or omission pursuant to

---

**4.** Rule 60(b)(1), (b)(3) and (b)(6) provides:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;....

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;....

(6) any other reason justifying relief from the operation of the judgment....

Rule 60(b)(1), *see generally* 11 Wright & Miller, *Federal Practice and Procedure: Civil* § 2858 (1973 & Supp.1989). Similarly, a motion to vacate an order for fraud in its procurement under Rule 60(b)(3) must be proved by clear and convincing evidence. *Brown v. Pennsylvania R.Co.*, 282 F.2d 522 (3d Cir.1960), *cert. denied*, 365 U.S. 818, 81 S.Ct. 690, 5 L.Ed.2d 696 (1961). In fact, the requirements for pleading fraud under 9024 are stricter than those required for most other claims. *In re Met–L–Wood Corp.*, 80 B.R. 912 (N.D.Ill.1987), *aff'd*, 861 F.2d 1012 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989); *In re F.A. Potts & Co.*, 86 B.R. 853 (Bankr.E.D.Pa.1988), *aff'd*, 93 B.R. 62 (E.D.Pa.1988); *In re Chipwich, Inc.*, 64 B.R. 670 (Bankr.S.D.N.Y.1986). A party seeking relief under subsection (b) of this rule must also prove the misconduct complained of by clear and convincing evidence and demonstrate that such misconduct prevented him or her from fully and fairly presenting a claim or defense. *Square Const. Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir.1981); *Keys v. Dunbar*, 405 F.2d 955, 957–58 (9th Cir.), *cert. denied*, 396 U.S. 880, 90 S.Ct. 158, 24 L.Ed.2d 138 (1969); *Nederlandsche Handel–Maatschappij, N.V. v. Jay Emm, Inc.*, 301 F.2d 114 (2d Cir.1962). The existence of a meritorious defense is a prerequisite to granting relief under 60(b)(1), *In re Salem Mortg. Co.*, 791 F.2d at 460, as it is for relief under 60(b)(3), *Square Const. Co. v. Washington Metro. Area Transit Auth.; Frito–Lay of Puerto Rico, Inc. v. Canas*, 92 F.R.D. 384 (D.P.R.1981).

■ Finally, motions brought pursuant to 60(b)(1) and (b)(3) must be filed within a reasonable time, but in no event may they be filed beyond one year after the judgment, order or proceeding was entered or taken. Laches or undue delay thus may preclude a party from relief, even though the motion is made within the maximum time allowed by the rule. *Central Operating Co. v. Utility Workers of America*, 491 F.2d 245 (4th Cir.1974); *MacLeod v. District of Columbia Transit System, Inc.*, 283 F.2d 194 (D.C.Cir.1960); *Reid v. Liberty Consumer Discount Co.*, 484 F.Supp. 435 (E.D.Pa.1980). *See generally* 7 *Moore's Federal Practice* § 60.28[2] at 60–314 to 319 (2d ed. 1987).[5]

■ An initial determination must be made, then, as to whether the government brought its current motion within a reasonable time as is required under Rule 60(b); this determination is left to the discretion of the court. *In re Salem Mortg. Co.*, 791 F.2d at 459; *Smith v. Kincaid*, 249 F.2d 243, 245 (6th Cir.1957).

■ 'My power to set aside a previously entered order, although well established, *see Wayne United Gas Co. v. Owens–Illinois Glass Co.*, 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557 (1937); *In re Todem Homes, Inc.*, 51 B.R. 883, 888 (Bankr.S.D.N.Y. 1985), is not without its limits, some of which are noted above. However, the government's motion, brought approximately five months after entry of the order, is, I find, brought within a reasonable time as contemplated by Rule 60(b). This is especially true given the government's assertion, which I find to be valid, that it was not properly served with the motion to approve the amended stipulation. I will, therefore, entertain the substance of the motion.

---

**5.** The government asserts, based upon decisions such as *United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940), that the doctrine of laches may never be applied to it. Whether that absolute position is valid, *see, e.g., Heckler v. Community Health Services, Inc.*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984) (question left open); *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961) (assumed *arguendo* that laches would be applicable but, on the facts presented, inappropriate); *Reynolds v. Commissioner*, 861 F.2d 469 (6th Cir.1988) (judicial estoppel applied against Internal Revenue Service), need not be resolved. Nor need I consider whether the question of laches is affected by the application of standard bankruptcy principles to governmental claims, *see, e.g., In re International Horizons, Inc.*, 751 F.2d 1213 (11th Cir. 1985) (untimely IRS proof of claim will be disallowed), or the fact that this dispute arises in the context of a Rule 60(b) motion. *Cf. Jones v. Watts*, 142 F.2d 575 (5th Cir.), *cert. denied*, 323 U.S. 787, 65 S.Ct. 310, 89 L.Ed. 628 (1944) (governmental immunity does not protect United States from responding to Rule 60(b) motions).

### III.

Since the government is challenging the divesting of its lien from the debtor's liquor license, the threshold question arises whether the government's asserted secured interest against the liquor license is voidable as a preference. This issue brings into question the applicability of 11 U.S.C. §§ 547(b), (c)(6), and 545. The classification of the government's lien and its ability to defeat the claim of a hypothetical *bona fide* purchaser at the time of the bankruptcy filing potentially are determinative of the instant dispute. If its lien is avoidable, there would be no reason to invalidate the settlement transfer at issue—that is, one free and clear of an invalid lien. I would not reopen a closed bankruptcy case to review a settlement order, where there will be no relief available to the objecting party.

█ The government's lien claim is derived from taxes due from the debtor to the Internal Revenue Service. Any lien for government taxes is considered by the Bankruptcy Code to constitute a statutory lien, which is defined at § 101(47). *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 314 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 27 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5813, 6271 ("Tax liens are also included in the definition of statutory lien"). *See, e.g., In re Carolina Resort Motels, Inc.,* 51 B.R. 447 (Bankr.D. S.C.1985); *In re PDQ Copy Center, Inc.,* 26 B.R. 77 (Bankr.S.D.N.Y.1982).

█ Section 547(b) grants the trustee (or debtor-in-possession, *see* 11 U.S.C. § 1107(a)) the power to avoid certain transfers of interest of the debtor in property subject to the provisions of subsection (c), which states in relevant part:

(c) The trustee may not avoid under this section a transfer—

(6) that is the fixing of a statutory lien that is not avoidable under section 545 of this title.

Pursuant to section 545(2), the trustee may avoid a statutory lien on the debtor's property to the extent that the lien is not perfected or enforceable at the time of the commencement of the case against a *bona fide* purchaser, whether or not such a purchaser exists. Thus, if the government perfected its lien prior to the filing of the bankruptcy so as to defeat a *bona fide* purchaser as of that date, its lien is unavoidable.

The Internal Revenue Code at 26 U.S.C. §§ 6321 and 6322 provides that a lien upon all property and rights to property of the taxpayer arises at the time the tax liability of the taxpayer is assessed. This lien is not valid against a *bona fide* purchaser, however, until notice has been filed in conformity with certain statutory provisions. *See* 26 U.S.C. § 6323(a), (f);[6] *In re Girard,* 57 B.R. 66 (Bankr.E.D.Mich.1985); *In re Dunne Trucking Co.,* 32 B.R. 182 (Bankr. N.D.Iowa 1983); *In re Barry,* 31 B.R. 683 (Bankr.S.D.Ohio 1983).

The government's notices regarding the debtor's tax liens were filed and thus perfected on two separate occasions, January 6, 1987 and April 1, 1988. Thus, only the first of the two notices was filed prepetition; the lien, to the extent it was thus perfected, cannot be avoided by the debtors. Therefore, the IRS's tax lien in the amount of $22,440.00, which was both assessed and perfected prior to the initiation of the debtor's bankruptcy case, could not be avoided as preferences. The extent to which the lien is unperfected, on the other hand, is the amount which may be avoided by the trustee in bankruptcy. *See In re PDQ Copy Center, Inc.; In re Debmar Corp.,* 21 B.R. 858, 861–62 (Bankr.S.D.Fla. 1982). The government's notice of April 1,

---

6. Section (a) and (h)(6) provide:

(a) Purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors.—The lien imposed by section 6321 should not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.....

(h) Definitions.—For purposes of this section and section 6324—

(6) Purchaser.—The term "purchaser" means a person who, for adequate and full consideration money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice....

1988 was filed post-petition (and pertains to taxes assessed after bankruptcy); therefore, the IRS tax liens totalling $11,188.72 could be avoided for the benefit of the estate pursuant to §§ 547(c)(6) and 545(2). In sum, the government's lien on estate property that would survive a challenge is in the amount of $22,440.00.

As a result of this validly perfected prepetition lien, I must address the government's motion to set aside the transfer of the liquor license free and clear of its lien.

## IV.

The government asserts that Aaron's did not hold a perfected security interest in the liquor license (much less a first lien on the license), contrary to that entity's representations to this court, as a matter of law. For the following reasons I agree with the government's position and hold that Aaron's did not hold a valid lien.

 Under the Uniform Commercial Code, as adopted in Pennsylvania, the subject of a security interest must be personal property. 13 Pa.C.S.A. § 1201. *See In re Jackson*, 93 B.R. 421, 423 (Bankr.W.D.Pa. 1988); *In re Revocation of Liquor License*, 72 Pa.Cmwlth. 367, 456 A.2d 709 (1983). At issue, then, is whether a liquor license is defined by state law to constitute personal property.

Prior to July 1, 1987, the Pennsylvania Liquor Code, at 47 Pa.S.A. § 4–468(b.1), stated that "The license shall continue as a personal privilege granted by the [Liquor Control Board] and nothing therein shall constitute the license as property." [7] Section 4–468 was amended in 1987 to include a new subsection (d), which provides that "The license shall constitute a privilege between the board and the licensee. As between the licensee and third parties, the license shall constitute property." This language was in effect neither at the time the debtor and Aaron's entered into their security agreement nor at the time of the bankruptcy filing.

 Prior to the passage of subsection (d), the Pennsylvania Supreme Court had held that § 4–468(b.1) specifically identified a liquor license as a privilege, and not as property. *1412 Spruce, Inc. v. Commonwealth, Pennsylvania Liquor Control Bd.*, 504 Pa. 394, 474 A.2d 280 (1984). Therefore, under Pennsylvania law that was in effect before July 1, 1987, a liquor license could be neither property nor the subject of a valid, state created security interest under the U.C.C. *21 West Lancaster Corp. v. Main Line Restaurant, Inc.*, 790 F.2d 354 (3d Cir.1986); *In re Jackson*, 93 B.R. at 423; *In re Hodges*, 33 B.R. 51 (Bankr.E.D.Pa.1983); *In re Revocation of Liquor License*. This conclusion compelled the court in *In re Jackson* to find that the creditor's purported interest, arising as it did before the effective date of the July 1987 statutory amendment, was unsecured. *Id.*, at 424 ("the inclusion of [a security interest in a liquor license] in an agreement dated in 1985 would be void").

For this dispute to have meaning, I must emphasize that the construction given to the state liquor code prior to its 1987 amendment was that the statute precluded the creation of state created liens. As the Court of Appeals expressly concluded in *21 West Lancaster Corp.*, such a statutory interpretation did not prevent the Internal Revenue Service from obtaining an involuntary statutory lien against a liquor license for nonpayment of taxes. The Court stated:

> [We reach] the anomalous conclusion that although a liquor license is not property for purposes of a security interest under Pennsylvania state law, it is property for purposes of a federal tax lien.

*Id.*, 790 F.2d at 359. Thus, the Third Circuit held that a later filed IRS lien had priority over an earlier filed creditor lien, as the earlier lien (but not the IRS lien) was invalid.

 Aaron's now attempts to circumvent this holding of the Court of Appeals, which is binding upon this court, by two related approaches. First, it suggests that the July 1987 amendment to the Pennsylvania Liquor Code, which had the effect

---

**7.** The language of § 4–468(b.1) was added in 1978.

of permitting creditors to take a U.C.C. security interest in a liquor license, somehow validated its earlier attempt to create a lien. I agree, though, with the bankruptcy court in *In re Jackson*, that there is no basis for concluding that this statutory amendment was designed to have retroactive effect.[8]

 Second, Aaron's notes that the decision of the United States District Court for the Eastern District of Pennsylvania in *21 West Lancaster Corp. v. Main Line Restaurant, Inc.*, 614 F.Supp. 202 (1985), decided on July 10 of that year, determined that a liquor license could be the subject of a security interest. (This decision was made ten days before Aaron's and the debtor entered into their security agreement and approximately a month before the license "was duly perfected by the appropriate recording of the Financing Statements," Memorandum of Law of Aaron's at 3.) Aaron's argues that, as a result of this district court decision, the law in effect at the moment the loan was made and the security agreement recorded was that a creditor could secure its loan with a security interest in a liquor license.[9]

The well-established presumption that the holding of a case will apply retroactively as well as prospectively is merely a corollary of the principle that federal courts should apply the law in effect at the time that cases are decided. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 486 n. 16, 101 S.Ct. 2870, 2879 n. 16, 69 L.Ed.2d 784 (1981); *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir.1989); *Al–Khazraji v. St. Francis College*, 784 F.2d 505, 510 (3d Cir.

1986); *Scott v. Local 863, Internat'l Brotherhood of Teamsters*, 725 F.2d 226, 228 (3d Cir.1984). This would compel a finding, then, that Aaron's did not hold a security interest in the license. *See, e.g., 21 West Lancaster Corp. v. Main Line Restaurant, Inc.*, 790 F.2d at 358–359.

The presumption of retroactivity may be overcome, however, by meeting the criteria established by *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) for deciding whether to apply nonretroactively the holding of a case. *See Al–Khazraji v. St. Francis College*, 784 F.2d at 512; *Fitzgerald v. Larson*, 769 F.2d 160 (3d Cir.1985). *Chevron* requires the federal courts to analyze the decision in three steps:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retrospective application, for "[w]here a decision of this Court could produce substantially inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

404 U.S. at 106–107, 92 S.Ct. at 355 (citations omitted).[10] Aaron's argument must

---

8. Therefore, I need not address the questions that would arise if the state law amendment were to have retroactive effect where, as here, the amendment occurred after the debtor filed its bankruptcy petition.

9. The district court had not announced its decision in *21 West Lancaster Corp.* at the time the parties in *Jackson* entered into and filed their security agreement.

10. There appears to be some uncertainty in the courts as to whether the *Chevron* factors should be considered conjunctively or disjunctively. *Compare Al–Khazraji v. St. Francis College*, 784

F.2d at 514 (because two of three *Chevron* factors present and the third neutral on the issue, case under scrutiny could not be applied retroactively) *with Erie Telecommunications, Inc. v. Erie*, 659 F.Supp. 580, 591 (W.D.Pa.1987) (in light of first *Chevron* factor, case would not be applied retroactively). *See also Fitzgerald v. Larson*, 769 F.2d at 164 (third factor overlaps with the first, for it would be inequitable to give retroactive application to a "shortening of the limitations period that altered established law upon which plaintiff could have reasonably relied").

be, then, that the Third Circuit decision in *21 West Lancaster Corp.* meets these *Chevron* criteria for nonretroactivity. Respectfully, I disagree.

I cannot conclude that the Third Circuit's decision either overruled clear past precedence or decided an issue of first impression "whose resolution was not clearly foreshadowed." *Chevron*, 404 U.S. at 106, 92 S.Ct. at 355. On the contrary, various courts had confronted the question prior to that court's consideration of the issue, and those courts were unanimous (except for the district court, in *21 West Lancaster Corp.*) in holding that a liquor license in Pennsylvania could be neither property nor the subject of a valid security interest. *See In re Hodges; 1412 Spruce, Inc.; In re Revocation of Liquor License*. The sole case decided to the contrary was overturned on that very issue. As a result, I cannot conclude that reliance on that decision was so justified as to ignore the fact that it was reversed, or to treat the holding of the Court of Appeals prospectively only.

In addition, I find that retroactive application of the Third Circuit's decision will only further the rule of Pennsylvania law; a contrary result will obviously thwart a consistent result obtained both by decision and by statute. Finally, I am not presented with facts to show that an inequitable result would follow from retrospective application of this decision.

For the foregoing reasons, then, I must conclude that Aaron's did not hold a perfected prepetition security interest in the debtor's liquor license, but that the IRS did. The effects of this conclusion will be discussed below.

## V.

 The federal government, which holds a perfected tax lien, seeks to vacate the order entered by me on April 28, 1988, arguing that the order was improper because the government did not receive proper notice of its consideration under Bankr. Rule 9014, which deals with contested matters. The debtor and Aaron's counter that the government had been given proper notice under Rule 2002. For the following reasons I find that the notice, mailed as it was under Rule 2002, was not proper under the circumstances.[11]

 On August 1, 1987, before the first motion to approve the parties' stipulation to transfer the liquor license was filed and long before the motion to approve the amended stipulation to transfer it free and clear of liens was filed, the amendments to Bankr.R. 6004 became effective. The

---

11. The government asserts in its post-hearing memorandum of law that the burden of proving proper notice rests upon the debtor. The government relies upon case law that holds that once a challenge is made to the sufficiency of service of process of a summons and complaint, the party alleging the adequacy of that service carries the burden of showing it was proper. *E.g., Familia De Boom v. Arosa Mercantil, S.A.,* 629 F.2d 1134 (5th Cir.1980), *cert. denied,* 451 U.S. 1008, 101 S.Ct. 2345, 68 L.Ed.2d 861 (1981); *Adams v. American Bar Assoc.,* 400 F.Supp. 219 (E.D.Pa.1975). *But see Rosen v. Solomon,* 374 F.Supp. 915 (E.D.Pa.1974), *aff'd without opinion,* 523 F.2d 1051 (3rd Cir.1975) (burden of showing insufficient service of process placed on moving party).

These cases involve motions authorized by Fed.R.Civ.Pr. 12(b)(4) and 12(b)(5) to challenge the procedure by which a defendant received notice of an action's commencement. I do not accept as necessarily true the government's conclusion that the burden structure under a Rule 12(b)(4) or (b)(5) motion should be utilized when an objection is raised to adequacy of no-

tice of a hearing in an ongoing bankruptcy case. The rationale underlying a defendant's due process right to be properly haled into court may differ from that underlying the rights of parties in interest to be noticed of a controversy in bankruptcy, especially where, as here, such a party has previously filed a proof of claim. *See In re Bramham,* 38 B.R. 459, 466 n. 30 (Bankr.D. Nev.1984) (the purpose of the notice under Interim Rule 2002(b) merely was to apprise interested parties of the action and afford them an opportunity to be heard). *Cf. In re Mandukich,* 87 B.R. 296, 299 (Bankr.S.D.N.Y.1988) (notice of meeting of creditors and time fixed for filing a complaint to determine dischargeability is properly served by mail under R. 2002, and does not constitute service of process. Notice properly sent; creditor failed to meet burden of raising "a cognizable claim of lack of notice"). However, I need not decide what burden properly attaches for I find that, even assuming the opposite of that schema—that the burden of proving improper notice in this situation would be upon the government—I find that the government has met that burden.

amendments added, *inter alia,* subsection (c) to Rule 6004, which states:

> c) Sale Free and Clear of Liens and Other Interests. A motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold. The notice required by subdivision (a) of this rule shall include the date of the hearing on the motion and the time within which objections may be filed and served on the debtor in possession or trustee.

Thus, by virtue of this rule change, motions for authority to sell property free and clear of liens are not governed by the notice provisions of Bankr.R. 2002 (as are notices to use, sell or lease estate property) but are governed by the service provisions of contested matters under Bankr.R. 9014. Rule 9014, in turn, explicitly incorporates the service requirements of Bankr.R. 7004. In relevant part, Rule 7004(b)(4), (5) states that service is to be made:

> 4) Upon the United States, by mailing a copy of the summons and complaint to the United States attorney for the district in which the action is brought and also the Attorney General of the United States at Washington, District of Columbia, and in any action attacking the validity of an order of an officer or an agency of the United States not made a party, by also mailing a copy of the summons and complaint to such officer or agency.
>
> 5) Upon any officer or agency of the United States, by mailing a copy of the summons and complaint to the United States as prescribed in paragraph (4) of this subdivision and also to the officer or agency. If the agency is a corporation, the mailing shall be prescribed in paragraph (3) of this subdivision of this rule.

It is undisputed that neither the motion to approve the original stipulation nor the motion to approve the amendment to the stipulation were served upon the United States Attorney for this district, or upon the Attorney General. Service of the two motions was made only upon the IRS, Special Procedures Branch. Even if I were to conclude that the original motion involved only the use, sale or lease of property so that notice under Rule 2002 was sufficient, *see generally In re Gabel,* 61 B.R. 661 (Bankr.W.D.La.1985), and that notice under 2002(g) alone was appropriate, *but see* Rule 2002(j), I cannot reach the same conclusion for the amended motion.

The instant transference of the debtor's liquor license (an asset of the estate) free and clear of liens to a third party must perforce be analogized to a sale of property free and clear, under applicable bankruptcy code provisions and rules. Obviously, a debtor cannot propose to either "use" or "lease" its property free and clear of liens; thus, the transference of the liquor license to Aaron's can only be conceived of as a "sale," where the debtor received what it must have considered adequate consideration for the exchange. Therefore, the debtor's motion to sell or otherwise transfer property free and clear of the IRS lien should have been made by motion in accordance with Bankr.R. 9014, and the service provisions of Bankr.R. 7004.

I appreciate that current Rule 7001 does not include a provision requiring an adversary proceeding in order to sell properties of the estate free and clear of liens. *Compare* former Bankr.R. 701(3), which included as an adversary proceeding one which was instituted to "sell property free of a lien or other interest for which the holder can be compelled to take a money satisfaction." Instead, current Bankr.R. 7001(3) includes as adversary proceedings those taken "to obtain approval pursuant to § 363(h) for the sale of both the interest of the estate and of a co-owner in property;" it no longer includes a proceeding to obtain approval of a sale free and clear of a security interest, authorized under the code by § 363(f). The sale of property of the estate is instead governed by Rule 6004, which was amended, effective in 1987, to include current R. 6004(c), the provision at issue. Nonetheless, the service requirements under Rule 6004(c) are identical to those for adversary proceedings.

It is thus fairly evident that a trustee or a debtor-in-possession may sell property of

the estate free and clear of liens only by complying with the applicable notice requirements of Bankr.R. 7004, and can effectively conclude the sale or transfer free and clear of any liens and encumbrances of all parties only when they are properly notified and given an opportunity to object to the proposed sale. Any actual difference between a "settlement" of estate property free and clear of liens, and a "sale" of property free and clear, is not readily apparent. Certainly, if there is any real difference, I do not conclude that creditors should be afforded less protection by way of notice in the former situation than in the latter.

## VI.

■ Respondents' failure to comply with the service requirements found in Bankr.R. 6004(c), which incorporate the provisions of Rules 7004(b)(4), (5), cannot be overlooked.[12] The duty to serve both the local United States Attorney and the Attorney General whenever the United States (or, in bankruptcy court, a federal agency) is involved in litigation is derived from former Bankr.R. 704 and Fed.R.Civ.P. 4(d)(4); indeed, the requirement predates the passage of the Federal Rules of Civil Procedure. *See Messenger v. United States,* 231 F.2d 328 (2d Cir.1956). Its purpose flows from the government's sovereign immunity, and thus its ability to determine how it is to be sued, as well as a recognition of the difference in functions and concerns between these two federal officials. *Id.* As a result, the failure of a party to comply with the provisions of Fed. R.Civ.P. 4(d)(4) has resulted in the dismissal of the lawsuit, *id.; Williams v. United States,* 558 F.Supp. 66 (E.D.N.C.1983), and the setting aside of any entry of default judgment. *See Borzeka v. Heckler,* 739 F.2d 444, 446 (9th Cir.1984). *See also Mat-*

*ter of Norris,* 90 B.R. 424, 427 (Bankr.D. Neb.1988) (failure to properly serve state government under Rule 7004(b) causes court to grant dismissal motion).

Thus, I conclude that the instant motion under Bankr.R. 9024 should be granted. *See Borzeka v. Heckler; In re Owens,* 67 B.R. 418, 421 n. 3 (Bankr.E.D.Pa.1986). *See also Wesco Products Co. v. Alloy Automotive Co.,* 880 F.2d at 985 (allowing relief under Rule 60(b)(1)). Due to the respondents' failure to properly serve the United States, the government's lien (which is the only valid lien on debtor's liquor license) has been terminated without affording the government the requisite notice and opportunity to object. *See In re Vanguard Oil & Service Co.,* 88 B.R. 576 (E.D. N.Y.1988). Moreover, the underpinning by which the amended stipulation was approved—that Aaron's held a first lien on the liquor license—has been now determined inaccurate.

I shall enter an order vacating my order of April 28, 1988 which approved the amended stipulation insofar as the debtor's liquor license is concerned. However, I shall follow the suggestion of the United States and do no more; that is, I shall not define the effect of this grant of relief under Rule 9024 to the United States. Whether the failure of respondents to make proper service should result in dismissal with prejudice of their attempt to sell free and clear of liens, *see Williams v. United States,* or whether they should have leave to now comply with the provisions of Rule 6004(c) I do not now decide. *See Borzeka v. Heckler; Jordan v. United States,* 694 F.2d 833 (D.C.Cir.1982). *See also In re Legend Industries, Inc.,* 49 B.R. 935, 937–38 (Bankr.E.D.N.Y.1985).

Nor do I decide whether the provisions of 11 U.S.C. § 363(m) are relevant[13] and

---

**12.** Under former Bankr.R. 704(h), insignificant defects in service could be disregarded and service declared effective without literal compliance with the provisions of Rule 704. *See In re Fleet,* 53 B.R. 833, 841 (Bankr.E.D.Pa.1985). Current Bankr.R. 7004 contains no such provision; it does, however, incorporate Fed.R.Civ.P. 4(h). Rule 4(h) only grants a court discretion to allow the correction of improper service of pro-

cess when such correction would not "materially prejudice" the rights of the party against whom improper service had issued. *See generally 9 Collier on Bankruptcy,* ¶ 7004.003[8] (15th ed. 1989).

**13.** While the provisions of § 363(m) do not refer expressly to sales free and clear of liens under § 363(f), I note that some courts have

whether the lien of the United States still attaches to the liquor license now held by Nick's American Cafe (or still a later unknown transferee) or to the proceeds of the sale of the liquor license. Not only is the record before me silent upon the facts necessary to decide these issues (e.g., the consideration paid by Nick's American Cafe for the liquor license is unknown, as is the party to whom the consideration was paid), but the ultimate transferee is not a party to this dispute. No determination of the effect of granting the government's instant motion should be made without permitting the ultimate transferee the opportunity to be heard.[14]

### ORDER

AND NOW, this 13 day of October, 1989, upon consideration and for the reasons set forth in the accompanying Memorandum Opinion, the Order entered by this Court on April 28, 1988 captioned "Order Approving Modified Stipulation" is hereby VACATED to the extent that the order permitted transference of the debtor's liquor license free and clear of the IRS perfected lien in the amount of $22,440.00.

It is further ORDERED that this bankruptcy case shall remain open for sixty days from the date of this order so that any party in interest may seek a determination of the outstanding, unresolved issues. If no request by a party in interest for such resolution is requested within this sixty day period, then this bankruptcy case shall be closed.

accepted its applicability to such sales. *In re Magwood,* 785 F.2d 1077, 1080–81 (D.C.Cir. 1986); *In re Vanguard Oil & Service Co.,* 88 B.R. at 579–80. Whether I agree and the effect, if any, upon this issue of decisions such as *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir.1986), I need not decide. *See generally In re Snyder,* 74 B.R. 872 (Bankr.E.D.Pa. 1987), *aff'd,* C.A. No. 87–4746 (E.D.Pa. August 5, 1987) (Fullam, C.J.).

14. The government states in its memorandum, at 14:

> [I]f the Court determines that the April 28, 1988, Order Approving Modified Stipulation should be vacated, then the United States and the current holder of the liquor license can attempt to determine the rights of each, with resort to the judicial process only as a last resort.