**In re Paul A. LUNDY and Theresa M. Lundy, Debtors.**

**Bankruptcy No. B87–01801.**

United States Bankruptcy Court, N.D. Ohio.

Feb. 9, 1990.

Steven S. Davis, Cleveland, Ohio, for debtors.

Michael Lorber, Twinsburg, Ohio, for Old Stone Credit Corp.

OPINION

DAVID F. SNOW, Bankruptcy Judge.

This opinion is occasioned by the Debtors' motion to reinstate the automatic stay filed with this Court on February 7, 1989 to prevent Federal National Mortgage Association ("FNMA") from foreclosing its mortgage on a house formerly owned by the Debtors at 928 Selwyn Road, Cleveland Heights, Ohio (the "Property"). The Debtors sold the Property on August 4, 1988. This apparently straightforward sale of a modest home has resulted in a complex and confused tug of war between FNMA and the Debtors.

Debtors filed their chapter 13 case on May 26, 1987. Debtors prosecuted the case expeditiously and their plan was confirmed on August 28, 1987. The present difficulties had their genesis in a motion to remove stay in respect of the Property filed on January 26, 1988 by Old Stone Credit Corporation ("Old Stone") as servicing agent for FNMA. Old Stone's motion was not opposed and resulted in an order granting FNMA relief from the stay which was entered by the Court on March 10, 1988. FNMA had a second mortgage lien on the Property which secured a principal obligation of approximately $13,000 together with interest.

Following entry of the order lifting the stay, FNMA initiated a foreclosure action against the Debtors in respect of the Property in state court on May 27, 1988; judgment was granted in favor of FNMA in that proceeding on November 1, 1988 and a sheriff's sale was scheduled for January 30, 1989. That sale was aborted, however, by a stay motion filed by the Debtors in state court. Thereafter the Debtors filed their motion in this Court to reinstate the automatic stay in respect of the Property.

*Factual Background*

The facts in this case were developed at a brief trial on November 14, 1989. The facts are not in dispute. The Property was sold to Robert Brownlee, Jr. on August 4, 1988 pursuant to an order entered by this Court on the same date authorizing the

sale of the Property (the "Sale Order") after an uncontested hearing held on July 26, 1988 before Judge Baxter. The Sale Order, in addition to authorizing the sale, stated in part

IT IS FURTHER ORDERED that out of the proceeds of sale the escrow agent shall pay the first mortgage holder, and to the extent he is able, the second mortgage. The balance of said second mortgage shall be treated as an unsecured claim and paid within the Chapter 13 Plan.

IT IS FURTHER ORDERED that the pending foreclosure action shall be dismissed. (emphasis added)

Debtors' right to the relief it requests appears to turn on whether FNMA was given appropriate notice of the hearing which culminated in the Sale Order.

Debtors' motion to sell the Property was filed on June 9, 1988, almost three months to the day after FNMA had obtained its relief from stay and about two weeks after FNMA had filed its foreclosure action in state court. The motion stated that "the holder of the first mortgage has obtained relief from the stay and is proceeding with foreclosure, and the holder of the second mortgage is currently seeking relief from the stay."[1] Attached to Debtors' motion was a broker's standard form of real estate contract captioned Offer to Purchase executed both by Paul A. Lundy, one of the Debtors, as seller, and by Robert L. Brownlee, as purchaser, and dated March 10, 1988. The Offer to Purchase obligated Mr. Lundy to convey good title to the Property to Mr. Brownlee free from all liens except taxes. The motion to sell requested approval of the Offer to Purchase and the completion of the sale in accordance with its terms and expressly provided that the proceeds would be used to effect the "[P]ayoff of the first and second mortgage." Attached to the motion was a certificate of service indicating that "all creditors" were served on an unspecified date.

The Property was sold to Mr. Brownlee for approximately $38,000. After paying off the first mortgage and the costs of sale only $25.44 remained to pay to FNMA on its second mortgage. The Debtors had scheduled the Property at $54,000. A curbside appraisal done in March 1989 at the instance of both parties valued the Property at $45,000. A similar appraisal done in August 1989 showed the value of the Property as $48,800. Nevertheless, nothing in the record indicates that the 1988 sale to Mr. Brownlee was not at arm's length or was not made at the best price which could then be obtained. The Court makes no finding as to the value of the Property. However, the fact that Debtors valued the Property at $54,000 in their schedules indicates that FNMA had reason to believe that its interest had substantial worth. The subsequent appraisals tend to support that belief.

Despite the certificate of service, neither Old Stone nor FNMA was served with the motion to sell. Notice of the motion to sell was apparently given instead to Freedlander Financial Services ("Freedlander") at its address in Richmond, Virginia listed in the Debtors' schedules. Freedlander, whose correct corporate name is apparently "Freedlander, Inc. The Mortgage People," had, however, assigned its note and mortgage to FNMA on July 17, 1987 after this case was filed and Freedlander had no further interest in the Property at the time it was notified of Debtors' motion to sell. The assignment of the mortgage to FNMA was filed in the office of the Cuyahoga County Recorder on September 8, 1987.

It appears that Freedlander was itself in financial distress. Testimony at the trial indicated that Freedlander had filed for bankruptcy either prior to or at about the time it would have received Debtors' notice. In any event FNMA's evidence that it did not receive a copy of that notice from Freedlander was not rebutted. It appears

---

1. It appears that Debtors confused the first and second mortgagees in this statement. FNMA, the second mortgagee, had already obtained relief from stay and was proceeding to foreclosure. The first mortgagee had filed a motion for relief from stay on May 16, 1988, which was granted on June 30, 1988. As noted above, the sale motion was filed between the later two dates.

from the evidence that no notice of the hearing on Debtors' motion to sell the Property was given to Old Stone or to FNMA and that neither of them knew of the Debtors' intent to sell the Property or to effect a dismissal of any pending foreclosure action.

Under these circumstances, was the notice to Freedlander sufficient to deny FNMA the right to pursue foreclosure of its mortgage notwithstanding Old Stone's communications with the Court and the Debtors concerning its second mortgage lien in the Property. These communications included Old Stone's two proofs of claim filed on October 19, 1987 showing that Freedlander's mortgage had been assigned to FNMA and that Old Stone was FNMA's servicing agent, Old Stone's motion for relief from stay and the Court's order granting that motion, the Debtors' own reference to the relief from stay in the sale motion, the recorded assignment of FNMA's mortgage and correspondence from Old Stone in respect of the mortgage with Debtors and/or its counsel.

### Discussion

Apart from Debtors' possible breach of contract or warranty if FNMA's mortgage was not discharged by the sale to Mr. Brownlee, Debtors appear to have no continuing interest in the Property. The Property now appears to be owned by Mr. Brownlee and to be subject to the mortgage obtained by Mr. Brownlee to finance its purchase. Therefore, none of the parties having any continuing interest in the Property, except FNMA, is before the Court. This fact necessarily circumscribes the scope of any relief this Court can grant and raises some question as to whether we should address the issue at all.

Debtors' case is still pending and Debtors continue to perform under their confirmed plan. Debtors have apparently concluded that FNMA's foreclosure effort may impact them adversely. In view of this and since FNMA has not objected to Debtors' standing, we deem it appropriate to decide Debtors' motion on the merits. Moreover, it appears that the Court has the power

and obligation to clarify the Sale Order in the context of Debtors' motion to stay FNMA's foreclosure effort. Although the Court's decision on this issue will remove an impediment to FNMA's foreclosure effort in state court, nothing in this decision is intended to bind any person or entity other than Debtors and FNMA.

On the basis of the undisputed facts it does not appear that FNMA was given adequate notice of Debtors' motion to sell the Property or of the hearing where that sale was approved and which resulted in the Sale Order. Moreover, no evidence was presented to suggest that FNMA's right to assert such lack of notice has been lost or impaired because of any delay or neglect on its part in asserting its rights.

Debtors do not contend that notice was given to Old Stone or FNMA or that Freedlander was FNMA's agent or authorized to receive notices on its behalf. Therefore the only argument that the notice to Freedlander was sufficient appears to stem from Bankruptcy Rule 2002(g). That rule provides that

> All notices required to be mailed under this rule to a creditor ... shall be addressed as such entity or an authorized agent may direct in a request filed with the court; otherwise, to the address shown in the list of creditors or the schedule whichever is filed later. If a different address is stated in a proof of claim *duly filed*, that address shall be used unless a notice of no dividend has been given. (emphasis added)

Old Stone's proof of claim on behalf of FNMA was filed on October 19, 1987, 25 days after the bar date for filing claims on September 24, 1987. Had FNMA's claim been one simply for unsecured debt, its claim would probably have come too late and would have been barred under Bankruptcy Rule 3002(c). From that perspective there would appear to be a good prima facie argument that a claim filed out of time so as to be barred should not be deemed to have been "duly" filed under Rule 2002(g).

■ It does not follow, however, that a secured claim filed in a chapter 13 case after the bar date is not timely filed. First of all, there is no requirement that a proof of claim be filed for a secured claim. *See* Bankruptcy Rule 3002(a); *In re Fernwood Markets,* 76 B.R. 501 (E.D.Pa.1987). As a corollary, a secured claim is not necessarily avoided by the bankruptcy process simply because no proof of claim is filed. 11 U.S.C. § 506(d)(2); *In re Fernwood Markets, supra.* In any event, no issue was raised in this case that FNMA's claims were barred by late filing. From this perspective it appears that FNMA's proofs of claim were timely filed. The Debtors do not contend that FNMA's proofs of claim were not otherwise duly filed in accordance with applicable bankruptcy rules, nor does this Court discern any basis for that contention. Therefore, it does not appear that the notice to Freedlander could be deemed notice to FNMA under Rule 2002. But even if it were, it does not appear that Rule 2002 governs notice in this situation.

Rule 2002 appears designed to afford participants in the bankruptcy case notice of significant events. Typically these are events of general concern to those having claims against the debtor. Since creditors may number in the hundreds or even thousands in big cases, Rule 2002(g), which deals with the mailing and addressing of notices, prescribes simple rules which can be implemented mechanically by the clerk or other party giving notice. The emphasis in Rule 2002(g) appears to be on administrative convenience rather than on assuring that notice is in fact received. This emphasis is less appropriate where the debtor seeks to deal with a specific property interest such as FNMA's mortgage interest. In that event other rules designed to assure notice to the interested party come into play. *See In re J.B. Winchells, Inc.,* 106 B.R. 384, (Bankr.E.D.Pa.1989); *In re Fernwood Markets,* 73 B.R. 616 (Bankr.E.D.Pa. 1987).

Bankruptcy Rule 6004(c) provides as follows:

A motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold. The notice required by subdivision (a) of this rule shall include the date of the hearing on the motion and the time within which objections may be filed and served on the debtor in possession or trustee.

Although Debtors' motion to sell the Property does not on its face purport to request sale of the Property free and clear of all liens or other interests in the precise language of the Rule, it clearly had the same intent when read in conjunction with the Offer to Purchase. In order to consummate the transfer contemplated by the Offer to Purchase, it was necessary to discharge all existing mortgages including FNMA's. Therefore FNMA was entitled under Rule 6004(c) to the notice prescribed by Rule 9014.

Rule 9014 requires that the motion "shall be served in the manner provided for service of a summon and complaint by Rule 7004 ...." Rule 7004(b)(3) authorizes service on a corporation.

[B]y mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

Since Debtors' only relevant service was on Freedlander and Freedlander was not an agent of FNMA, the notice to Freedlander was inadequate. FNMA through Old Stone had done everything reasonably designed to give Debtors and other parties notice of its interest in the Property. Under these facts the Debtors certainly knew, or should have known, that Freedlander's mortgage had been assigned to FNMA and that Old Stone, not Freedlander, was endeavoring to foreclose on the Property. There is no basis on the present facts to conclude that FNMA was given adequate notice of Debtors' motion to sell the Property.

In view of this there appears to be no basis for this Court to enjoin FNMA from proceeding with its foreclosure action either by reimposing the automatic stay or by ordering FNMA to dismiss its foreclosure proceeding in accordance with the language in the Sale Order. Viewed from a somewhat different perspective, FNMA is, as against the Debtors, entitled to relief from the terms of the Sale Order under Bankruptcy Rule 9024 (Rule 60(b) of the Federal Rules of Civil Procedure). Rule 60(b)(1) provides that

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise or excusable neglect; ...

Since FNMA did not in fact receive notice or have knowledge of the hearing at which the sale of the Property free of its mortgage was authorized, FNMA would be entitled to relief under this Rule, at least as against the Debtors. *In re Yoder*, 758 F.2d 1114 (6th Cir.1985).

Having reached this conclusion the Court is left with the awkward task of shaping an appropriate remedy in the absence of the persons or entities other than FNMA which now hold interests in the Property. Debtors in effect urge the Court to value FNMA's interest in the Property under section 506 of the Bankruptcy Code presumably as a basis for paying FNMA the value of its interest—although how that would be accomplished is unclear. Unfortunately we perceive no way to put Humpty Dumpty together again so conveniently. The Debtors have suggested no fund from which FNMA's interest, when valued, could be paid. Moreover, it is not clear how the Property could be valued since it is no longer property of the estate and the Court lacks jurisdiction over it.

For this reason it does not appear that the Court can now unwind the sale. It has been executed and persons or entities other than the Debtors presumably derived their title or interest in the Property through the Sale Order. *See In re J.B. Winchells, Inc., supra,* at 396.

Implicit in the denial of Debtors' motion to reinstitute the stay is the determination that FNMA is entitled, at least as against Debtors, to relief from those portions of the Sale Order which purport to deprive FNMA of its second mortgage interest in the Property and to dismiss FNMA's foreclosure proceeding. Nothing in this opinion or in the attached order, however, is intended to or shall impair or otherwise affect the rights of any person or entity claiming any interest in the Property, other than FNMA and the Debtors. The Court's order in conformity with this opinion is attached.

## ORDER

An opinion having been rendered on the Debtors' motion to reinstate the automatic stay,

IT IS ORDERED, ADJUDGED and DECREED that

1. The motion to reinstate the automatic stay be, and it hereby is, denied.

2. The following provisions in this Court's July 26, 1988 order be, and they hereby are, vacated:

A. The balance of said second mortgage shall be treated as an unsecured claim and paid within the chapter 13 plan.

B. It is further ordered that the pending foreclosure action shall be dismissed.

3. Except as provided in paragraph 2 above, the Court's July 26, 1988 order shall remain in full force and effect.