In re EQUITABLE FINANCIAL
MANAGEMENT, INC.,
Debtor.

Mark L. GLOSSER, Trustee, Plaintiff,

v.

COLONIAL PACIFIC LEASING
CO., Defendant.

Bankruptcy No. 91–0799–BM.
Adv. No. 93–2264–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Feb. 23, 1994.

Steven T. Shreve, Mark L. Glosser, Trustee, Stone, Glosser & Stone, Pittsburgh, PA, for plaintiff/Trustee.

Owen W. Katz, Bernstein and Bernstein, P.C., Pittsburgh, PA, for defendant Colonial Pacific Leasing Co.

### *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

The chapter 7 trustee seeks pursuant to 11 U.S.C. § 544(a)(1) to avoid the security inter-

est of defendant Colonial Pacific Leasing Company (hereinafter "CPL") in two equipment leases. According to the chapter 7 trustee, CPL's security interest may be avoided pursuant to this court's holding in *In re Funding Systems Asset Management Corporation*, 111 B.R. 500 (Bankr.W.D.Pa.1990), because debtor possessed "duplicate originals" of the chattel paper evidencing CPL's security interest.

CPL has raised two defenses to the action against it. CPL asserts that the action is time-barred by the statute of limitation set forth at 11 U.S.C. § 546(a). It further argues that its security interest cannot be avoided because the documents debtor possessed do not constitute "duplicate originals" of the chattel paper CPL possesses. According to CPL, all chattel paper pertaining to the leases in question remained in its exclusive possession at all relevant times.

Judgment will be entered in favor of CPL and against the chapter 7 trustee for reasons set forth below.

–I–

## FACTS

Debtor was engaged in the business of leasing equipment to end-user lessees. It first would lease equipment to a lessee and then would obtain necessary financing from a third party in order to purchase the equipment. CPL was such a third party.

Debtor and the end-user lessee would execute a lease agreement to which was attached an equipment schedule describing the equipment subject to the lease. Among other things, the lease agreement itself set forth the names and addresses of the lessor and of the end-user lessee and specified the terms of the lease. It also included a certificate of delivery and acceptance which the end-user lessee dated and executed. The lease agreement also was dated and executed in ink by the debtor as lessor and by the end-user lessee.

The equipment schedule attached to the lease agreement and incorporated therein set forth: the name of the lessor; the name of the end-user lessee; the location of the equipment; the date of the lease; the lease number; and the quantity and description of the leased equipment. The equipment schedule was dated and executed in ink by the end-user lessee. Debtor did not execute this document.

Debtor entered into two (2) lease agreements in 1990 that are at issue in this case. Eachles & Associates, Inc. of Phoenix, Arizona was the end-user lessee in the first lease. Coors/RMS of Washington, Pennsylvania, was the end-user lessee in the second lease. Although debtor certified to CPL that it had delivered all documents relating to the lease transactions, in fact unbeknownst to CPL debtor retained certain documents relating to previously aborted but related transactions.

The version of the Eachles lease agreement CPL possessed had been executed in ink by debtor as lessor and in ink by Eachles as lessee. The execution date of the lease agreement, the lease commitment date, the rental commencement date, and date of the certificate of delivery and acceptance executed in ink by Eachles was March 14, 1990.

The version of the Eachles lease agreement debtor possessed differed in material respects from CPL's version. Debtor's version had been executed in ink only by Eachles. Debtor had not executed it. There was no lease commitment date and no rental commencement date. Although the execution date of the lease agreement itself was March 14, 1990, the certificate of delivery and acceptance executed in ink by Eachles was dated March 13, 1990.

The version of the Eachles equipment schedule CPL possessed had been executed in ink by Eachles and made reference to the lease agreement dated March 14, 1990.

The version of the Eachles equipment schedule debtor possessed was a photocopy of the document CPL possessed. It had not, however, been executed in ink by Eachles.

The version of the Coors/RMS lease agreement CPL possessed had been executed in ink by debtor as lessor and in ink by Coors/RMS as lessee. The execution date of the lease agreement, the lease commitment date, the rental commencement date, and the date

of the certificate of delivery and acceptance executed by Coors/RMS was June 8, 1990.

The version of the Coors/RMS lease agreement debtor possessed differed in material respects from CPL's version. Debtor's version had been executed in ink only by Eachles. Debtor had not executed it. There was no lease commitment date and no rental commencement date. The date of execution of the lease agreement was April 12, 1990, not June 8, 1990. Finally, the certificate of delivery and acceptance executed in ink by Coors/RMS was undated.

The version of the Coors/RMS equipment schedule CPL possessed had been executed in ink by Eachles and made reference to the lease agreement dated June 8, 1990.

The version of the Coors/RMS equipment schedule debtor possessed was a photocopy of the document CPL possessed. It had not been executed in ink by Coors/RMS. Because it was a photocopy of CPL's document, it also made reference to a lease agreement dated June 8, 1990.

Subsequent to the execution of the above lease agreements, debtor obtained financing from CPL in order to purchase the equipment subject to the leases. In return for the financing provided by CPL, debtor granted CPL a security interest in the leases and in the equipment. Debtor also assigned the leases themselves to CPL. The assignment contained a provision wherein debtor warranted that the lease was genuine and enforceable and was the only lease agreement with respect to the equipment. CPL agreed to pay debtor a specified up-front lump-sum amount in return for debtor's interest in all future payments due under the leases.

Upon its receipt of the lump sum payments from CPL, debtor delivered to CPL chattel paper pertaining to the two lease transactions. The chattel paper delivered to CPL included: original executed lease agreements; original executed equipment schedules; original executed assignments; and other miscellaneous original documents pertaining to the lease transactions.

Debtor also provided CPL with UCC–1 financing statements naming debtor as the secured party with respect to the equipment and designating CPL as the secured party's assignee. The original financing statements were filed in the jurisdictions where the equipment was located in accordance with the requirements of those jurisdictions.

On March 15, 1991, debtor filed a voluntary chapter 11 petition. The case was converted to a chapter 7 proceeding on May 16, 1991. The chapter 7 trustee was appointed the next day.

On May 12, 1993, the chapter 7 trustee commenced the above adversary action against CPL.

Trial was held on the trustee's complaint on January 13, 1994, at which time both sides were given an opportunity to present any evidence they deemed appropriate.

–II–

## ANALYSIS

■ The chapter 7 trustee in this case qualifies under Pennsylvania law as a lien creditor as of the date on which the chapter 11 petition was filed—i.e., as of March 15, 1991. *See* 13 Pa.C.S.A. § 9301(c) (Purdon's 1984)[1].

If CPL's security interest in the above leases was unperfected as of the date in which debtor filed its voluntary chapter 11 petition, its interest is subordinate to the rights of the chapter 7 trustee as hypothetical lien creditor, *see* 13 Pa.C.S.A. § 9301(a)(2)[2], and may be avoided by the trustee pursuant to 11 U.S.C. § 544(a)(1)[3].

According to Pennsylvania law:

(a) **General Rule.** Except as otherwise provided in subsection (b), an unperfected security interest is subordinated to the rights of:

.    .    .    .    .

(2) a person who becomes a lien creditor before the security interest is perfected.

---

1. 13 Pa.C.S.A. § 9301(c) provides as follows:

   A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy, or the like and includes ... a trustee in bankruptcy from the date of the filing of the petition ...

2. 13 Pa.C.S.A. § 9301(a)(2) provides as follows:

3. 11 U.S.C. § 544(a)(1) provides as follows:

[a] security interest in ... chattel paper may be perfected by the secured party's taking possession of the collateral ... A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained....

13 Pa.C.S.A. § 9305 (Purdon's 1984).

As has been noted, debtor had delivered to CPL fully executed original lease agreements and fully executed original equipment schedules for the Eachles and Coors/RMS leases. Without CPL's knowledge or consent, however, debtor possessed certain documents pertaining to the leases. What it possessed and how they differed from what CPL possessed has been detailed and will not be reiterated here.

The issue presented is whether or not CPL's security interest was fully perfected as of March 15, 1991 by virtue of its possession of the above chattel paper which debtor had delivered to it.

According to the chapter 7 trustee, CPL's security was unperfected because the documents which debtor retained also constitute original chattel paper.

CPL insists that its security interest in the above leases was perfected when the chapter 11 petition was filed. According to CPL, it had exclusive control and possession at all relevant times of all original chattel paper pertaining to the leases.[4]

■ A secured party fails to perfect by possession its security interest in a lease when it fails to exercise absolute dominion and control over all chattel paper pertaining thereto. *See In re Funding Systems Asset Management Corp.*, 111 B.R. at 518. Accordingly, CPL's security interest in the above leases is unperfected by possession only if an entity other than CPL had control

and possession of chattel paper pertaining thereto.

In order for the above documents possessed by debtor to defeat CPL's claim to perfection by possession, the documents must constitute "chattel paper", which is defined in pertinent part as follows:

> (a) **Definitions.**—The following words and phrases when used in this division shall have, unless the context clearly indicates otherwise, the meanings given to them in this subsection: ...
>
> > **"Chattel paper".** A writing or writings which evidence both a monetary obligation and ... a lease of specific goods.... When a transaction is evidenced both by such a ... lease and by an instrument or a series of instruments, the group of writings taken together constitutes chattel paper.

13 Pa.C.S.A. § 9105(a) (Purdon's 1984).

The chapter 7 trustee's contention that CPL's security interest in the above leases was unperfected because debtor had retained possession of chattel paper pertaining thereto is without merit.

As the above-quoted language of 13 Pa. C.S.A. § 9105(a) makes abundantly clear, "chattel paper" in a given instance may consist of more than one "writing". Both the lease agreements and the equipment schedules referred to therein and appended thereto must be taken into consideration when determining whether debtor had retained possession of any "chattel paper" pertaining to the leases in question. The lease agreements make reference to and incorporate the equipment schedules. Without the equipment schedules, the lease agreements are incomplete.

Careful examination of the documents retained by debtor compels the conclusion that they "evidence" neither a "monetary obligation" nor a "lease of specific goods".

---

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

  (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with

respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists....

4. CPL does not contend that it security interest in the above leases was perfected by virtue of the filing of the above UCC–1 financing statements.

As has been noted, the lease agreements in debtor's possession had been executed only by the end-user lessees. Debtor had not executed them at all. The places where debtor was to affix its signature were blank in the lease agreements debtor possessed. Absent debtor's signature, these documents do not "evidence" any obligation, monetary or otherwise, and do not constitute valid and legally enforceable leases of any kind.

The lease agreements debtor possessed were merely preliminary versions and were not completed documents having any legal effect. A representative of debtor who was familiar with the Eachles and Coors/RMS leases testified, without contradiction or impeachment, that debtor did not intend for the lease agreements upon which the trustee relies to be legally binding.

The matter does not end there. The equipment schedules which were incorporated by reference into the lease agreements in debtor's possession are similarly deficient. The equipment schedules debtor possessed were only photocopies of the originals CPL possessed. As such, they have no more binding legal effect than would a photocopy of, say, a ten dollar bill. No reasonably prudent purchaser of chattel paper would have accepted the photocopied equipment schedules as original equipment schedules constituting a portion of the lease agreements.[5]

The trustee's assertion that debtor, had it so elected, could have affixed its signature in ink to the lease agreements it possessed is to no avail. The documents debtor possessed would not thereby have become "chattel paper", as previously defined. Debtor still would not have been able to sell such "doctored" documents in the ordinary course of business to a *bona fide* purchaser because of other critical discrepancies.

As has been noted, both the lease agreement and the equipment schedule referred to and incorporated therein must be considered when determining whether debtor possessed any chattel paper in this case. The date of the Coors/RMS lease agreement debtor possessed is April 12, 1990. The lease date referred to in the equipment schedule is June 8, 1990. Even if debtor had so affixed its signature to its version of the lease agreement, the documents it possessed pertaining to the Coors/RMS transaction still would not evidence a monetary obligation and a lease of specific goods. Any attempt to sell such "doctored" documents in the ordinary course of business to a reasonably prudent *bona fide* purchaser of chattel paper would have been thwarted by this discrepancy.

The same can be said for the documents debtor possessed pertaining to Eachles, although for a different reason. The discrepancy is internal to debtor's version of the Eachles lease agreement. The date of execution of the lease agreement debtor possessed is at variance with the execution date of the certificate of delivery and acceptance contained therein. The former date is March 14, 1990 while the latter date is March 13, 1990. A reasonably prudent *bona fide* purchaser in the ordinary course of business of chattel paper would notice this discrepancy and would recognize that the Eachles documents debtor possessed did not constitute a finalized agreement evidencing a monetary obligation and a lease of specific goods.

An appropriate order shall be issued.[6]

### *ORDER OF COURT*

AND NOW at Pittsburgh this 23rd day of February, 1994, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that judgment is entered in favor of defendant Colonial Pacific Leasing Company and against Plaintiff Mark L. Glosser, chapter 7 trustee.

---

**5.** It was pointed out in *In re Funding Systems Asset Management Corp.*, 111 B.R. at 518, that a certified copy of documents may, in certain instances, stand in place of the original. This is not the situation here, however. The copies which debtor possessed were not certified by any party to the transactions as true and correct copies of the originals.

**6.** It is not necessary in light of the above outcome to address CPL's contention that the trustee's action against it is barred by the applicable statute of limitation.