### In re TEXAS EQUIPMENT COMPANY, INC., Debtor.

**Vaughn Culwell and Carolyn Culwell, Successors to Plains Farm Supply, Inc., Plaintiffs,**

v.

**Texas Equipment Company, Inc., Washington Mutual f/k/a Bank United, and Yoakum County Appraisal District, Defendants.**

Bankruptcy No. 01–50829–RLJ–7.
Adversary No. 02–5001.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Sept. 24, 2002.

Harold H. Pigg, Clifford, Field, Krier, Manning, Stone & Wilkerson, P.C., Lubbock, TX, for Plaintiffs.

Paul D. Pruitt, Irving, TX, for Defendant Washington Mutual.

### MEMORANDUM OPINION

ROBERT L. JONES, Bankruptcy Judge.

#### Background

On August 21, 2002, hearing was held on the motion for stay pending appeal filed by Vaughn Culwell and Carolyn Culwell. This adversary proceeding was initiated by the Culwells, as plaintiffs, seeking a declaratory judgment that they held a right of possession in and entry to certain properties located in Yoakum County, Texas, and, therefore, a right to set aside and cancel a warranty deed executed between Plains Farm Supply, Inc., as seller, and Texas Equipment Company, Inc., as buyer. The Culwells are successors to Plains Farm Supply, Inc. Defendant, Washington Mutual, denied that the Culwells had any equitable interest or title in or a right of entry to the Yoakum County properties, and claimed that its interest was superior to any right, title, or interest asserted by the Culwells. Generally, both the Culwells and Washington Mutual sought declaratory judgment relief to determine the parties' respective rights to the subject properties.

On March 25, 2002, a hearing on a motion by the Trustee to sell real and personal property, including a portion of the property subject of this adversary proceeding, and trial of this adversary proceeding were jointly held.[1] In accordance with the court's findings of fact and conclusions of law entered April 8, 2002, a final judgment in the adversary proceeding was

---

1. The adversary concerns two tracts, described as follows:

 *Tract 1:*
 All of Lots 3, 4, 5, and 6, of the Hillcrest Acres Addition, also known as the Scown Subdivision, of Section 37, Block AX, Public School Land, Yoakum County, Texas, as shown by the plat recorded in Volume 171, Page 14, Deed Records of Yoakum County, Texas.
 *Tract 2:*
 A survey of 5.025 acres, more or less, all being within the Southeast Quarter (SE/4) of Section 426, Block D, John H. Gibson, Yoakum County, Texas, and more particularly described as follows:

 BEGINNING at a point from which the Southwest corner of Section of 426 bears South a distance of 440.6 feet and West a distance of 2640.83 feet;
 THENCE East a distance of 278 feet;
 THENCE North a distance of 848.81 feet, a point on the South right-of-way line of Texas State Highway No. 337;
 THENCE S 66.10'W along said right-of-way line a distance of 303.92 feet;
 THENCE South a distance of 726 feet to the point of beginning.
 The Trustee's motion to sell concerns the property described as "Lovington Highway, Plains, Yoakum County Texas—6.025 acres more or less out of Section 426, Block D, John H. Gibson Survey."

entered August 7, 2002, denying the declaratory judgment relief sought by the Culwells and granting declaratory judgment relief to Washington Mutual. The court concluded that the equitable interest claimed by the Culwells cannot defeat the rights of either the Debtor, Texas Equipment Company, Inc., or the lienholder, Washington Mutual, and that the liens held by Washington Mutual on the subject property are superior to any right, title, or interest of the Culwells in the Yoakum County properties. In addition, and also in accordance with the court's findings and conclusions, the court entered its order on August 7, 2002, authorizing the Trustee to sell real and personal property located in Plains, Texas. At trial, the Culwells waived any further rights to personal property and therefore the adversary and the motion to sell addressed the real property only.

The Culwells have appealed both the court's final judgment and order and requested a stay of the final judgment and order pending resolution of the appeal pursuant to Rule 8005 of the Rules of Bankruptcy Procedure.

The court has jurisdiction over this matter under 28 U.S.C. § 1334(b), § 157(b)(1) and Rule 7062 and 8005, FED.R.BANKR.P.

### Discussion

■ The Culwells' appeal concerns both the final judgment rendered in the adversary, and the court's order authorizing the trustee to sell real property, a portion of which is the subject of the adversary.[2] Two Bankruptcy Rules govern the granting of a stay pending appeal of these matters: Rules 7062 and 8005. The question of which particular rule governs which particular matter is important because Rule 7062 may provide for a stay as a matter of right, whereas Rule 8005 provides only for a discretionary stay. *Compare* FED. R.BANKR.P. 8005, *with American Mfrs. Mut. Ins. Co. v. American Broadcasting–Paramount Theatres Inc.*, 87 S.Ct. 1, 3, 17 L.Ed.2d 37 (1966).

■ A motion under section 363 to approve the sale of property is a contested matter. *See* FED.R.BANKR.P. 6004(b); *In re J.B. Winchells Inc.*, 106 B.R. 384, 393–94 (Bankr.E.D.Pa.1989). It is not an adversary. *See* FED.R.BANKR.P. 7001. Rule 7062 normally applies only to adversaries. *See id.* A contested matter is governed by Rule 9014, which was modified in 1999 to provide that Rule 7062 does not apply in contested matters unless the court so directs. *See* FED.R.BANKR.P. 9014 advisory committee's note (1999). Therefore, unless the court orders otherwise, Rule 7062 does not apply to the court's order authorizing sale. *See In re Perry Hollow Golf Club Inc.*, 2000 WL 1854779 *1 (Bankr. D.N.H.2000). Rule 8005, however, does apply to a contested matter and specifically to an order authorizing sale.

As the lawsuit between the Culwells and Texas Equipment was an adversary proceeding, Rule 7062 applies to the adversary. *See* FED.R.BANKR.P. 7001. Rule 7062 provides that Federal Rule of Civil Procedure 62 applies in adversary proceedings. *See* FED.R.BANKR.P. 7062. In turn, Rule 62(d) provides that "[w]hen an appeal is taken the appellant by giving a supersedeas bond may obtain a stay.... The stay is effective when the supersedeas bond is approved by the court." FED. R.CIV.P. 62(d).

Courts have interpreted Rule 62(d) to authorize a stay pending appeal on a money judgment as a matter of right, if the appellant posts a sufficient supersedeas bond. *See American Mfrs. Mut. Ins. Co.*, 87 S.Ct. at 3; *Hebert v. Exxon Corp.*, 953

---

**2.** *See* note 1 *supra.*

F.2d 936, 938 (5th Cir.1992) (per curiam); *In re Westwood Plaza Apartments Ltd.*, 150 B.R. 163, 166 (Bankr.E.D.Tex.1993). In this context, the key is whether the judgment appealed from is in fact a money judgment—only upon entry of a money judgment may a party obtain a stay as a matter of right, and then only upon posting a sufficient supersedeas bond. *See id.* This is so "because a bond may not adequately compensate a non-appealing party for loss incurred as a result of the stay of a non-money judgment.... The supersedeas bond requirement in Rule 62(d) serves, in money judgment cases, as a kind-for-kind security to guarantee the judgment." *Hebert*, 953 F.2d at 938. Thus, when the judgment is not a money judgment, a supersedeas bond may not effectively protect the non-appealing party from loss incurred as a result of a stay. *See id.*

No precise definition of a money judgment exists. The Fifth Circuit has held that the real issue is not whether the judgment is a money judgment, but "whether the judgment involved is monetary or nonmonetary." *Id.* Thus, the Fifth Circuit held that an appellant was entitled to a stay pending appeal on a declaratory judgment when the declaratory judgment bound the appellant to pay a sum of money. *See id.* (holding that declaratory judgment over insurance coverage was a money judgment because it bound insurer to pay). Although the right to stay pending appeal applies only to money judgments, such right "does not preclude diverse forms of judgment pertaining to monetary responsibility from a stay under Rule 62(d) pending appeal." *Arnold v. Garlock Inc.*, 278 F.3d 426, 437 (5th Cir.2001).

While there is little law on the issue of whether a judgment constitutes a money or monetary judgment, the judgment in this adversary cannot be categorized as either a money or monetary judgment. In the case where it held that the particular declaratory judgment as issue was a money judgment, the Fifth Circuit so held because the declaratory judgment concerned insurance coverage—if the declaratory judgment found coverage, the insurer was liable for several hundred thousand dollars, whereas if the judgment found no coverage, the insurer was not liable. *See Hebert*, 953 F.2d at 937–38. The declaratory judgment was de facto a money judgment. *See id.* at 938. In the present case, the adversary was essentially a declaratory action to quiet title. The judgment bound neither party to pay any money, either directly or indirectly, but merely adjudicated their rights. Accordingly, the court's judgment is not a money judgment. *See Gleasman v. Jones, Day, Reavis & Pogue (In re Gleasman)*, 111 B.R. 595, 599 (Bankr.W.D.Tex.1990) ("The nature of bankruptcy proceedings is such that supersedeas stays are seldom applicable, as most bankruptcy court rulings adjust the relative rights of parties to property").

Assuming that the judgment in the adversary is, in fact, a non-monetary judgment, the Culwells are not entitled to a stay of the adversary pending appeal as a matter of right under Rule 62(d). *See Hebert*, 953 F.2d at 938. The Culwells are therefore at most eligible for a discretionary stay under Rule 8005. *See Note Buyers Inc. v. Cooler (In re Cooler)*, 1999 WL 33486070 (Bankr.D.S.C.1999) (holding that Rule 62(d) was inapplicable when judgment was not a money judgment, but that movant was instead eligible for a Rule 8005 discretionary stay).

■ The Fifth Circuit employs a four element test in deciding whether to grant a discretionary stay pending appeal: "(1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not

granted; (3) whether the granting of the stay would substantially harm the other parties; and (4) whether the granting of the stay would serve the public interest." *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir.1982). *Accord Arnold*, 278 F.3d at 438–39. In the Fifth Circuit, each of these elements must be met by the party requesting the stay. *See Arnold*, 278 F.3d at 438–39. The Fifth Circuit has instructed lower courts, including bankruptcy courts, to apply this test in the exercise of their discretion in deciding whether or not to grant a stay pending appeal. *See In re First South Sav. Ass'n*, 820 F.2d 700, 709 (5th Cir.1987); *In re Burkett*, 279 B.R. 816, 817 (Bankr.W.D.Tex.2002); *In re Johnson*, 105 B.R. 809, 810 (Bankr. N.D.Tex.1987) (Akard, J.). This same test applies to granting a stay pending appeal pursuant to Rule 8005. *See Turner v. Citizens Nat'l Bank of Hammond (In re Turner)*, 207 B.R. 373, 375 (2d Cir. BAP 1997); *In re Edwards*, 228 B.R. 573, 575 (Bankr.E.D.Pa.1999); *In re Westwood Plaza Apartments Ltd.*, 150 B.R. at 168.

■ With respect to the first element, the Fifth Circuit has explained that the movant "need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Arnold*, 278 F.3d at 439, *quoting Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A June 1981). When the issue appealed is mostly a factual question over which the bankruptcy court has broad discretion, such discretion is unlikely to be overturned on appeal. *See In re Burkett*, 279 B.R. at 817. Thus, with respect to questions of fact, the mov-

ant usually fails to satisfy the first element. *See id.* With respect to questions of law, however, especially questions involving the application of law, or when the law has not been definitively addressed by a higher court, the movant more easily satisfies the first element. *See In re Westwood Plaza Apartments*, 150 B.R. at 168.

The court decided the adversary by employing familiar Texas law of contract interpretation. The underlying facts were not disputed. The court construed the meaning of the operative documents and therefore the court's conclusions were principally legal in nature. Nevertheless, no Texas case directly on point decided the issues in the adversary. The court believes its decision sound but acknowledges that a denial of a stay effectively shuts off the Culwells' right of review. Given the circumstances, the court, for purposes of this motion, concludes the Culwells presented a "substantial case on the merits" and raised a "serious legal question." *See Arnold*, 278 F.3d at 439.

■ The court's order authorizing sale is reviewed for abuse of discretion. *See, e.g., Moldo v. Clark (In re Clark)*, 266 B.R. 163, 168 (9th Cir. BAP 2001). With respect to this order, the court's decision is unlikely to be reversed. However, the order authorizing sale was based on the court's ruling in the adversary. A court abuses its discretion when its ruling is based on an erroneous interpretation of the law. *See Whitehead v. Food Max of Miss. Inc.*, 277 F.3d 791, 793 (5th Cir. 2002). But for the peculiar nature of an order authorizing sale (namely, the finality rule represented by section 363(m) and mootness of appeal),[3] a reversal of the

---

**3.** Section 363(m) states that:
 The reversal or modification on appeal of an authorization under subsection (b) or (c)

of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that

court's decision in the adversary would surely also dictate a reversal of the order approving sale. Fairness and equity therefore dictate that the Culwells have met the first element with respect to both the order authorizing sale and the adversary judgment, as the two actions were tried together and are inseparably intertwined. *See, e.g., Gleasman,* 111 B.R. at 601 (staying foreclosure order pending debtor's appeal of adversary which underlay such order).

 As to the second element—whether the movant has made a showing of irreparable harm—the Fifth Circuit applies the finality rule, meaning that an appeal of a bankruptcy court's order authorizing sale is usually moot pursuant to section 363(m) once the sale has occurred. *See Ginther v. The Ginther Trusts (In the Matter of The Ginther Trusts),* 238 F.3d 686, 688–89 (5th Cir.2001). "[A] failure to obtain a stay is fatal to a challenge of a bankruptcy court's authorization of the sale of property." *Id.* at 689. Therefore, if the Culwells are denied a stay, a sale of the property at issue in both the adversary and the contested matter would be irreversible, even if the court is found to have erred in its judgment in the adversary. *See id.;* 11 U.S.C. § 363(m) (2002). The Culwells would be left without effective remedies. *See Ginther,* 238 F.3d at 689. The Culwells have therefore established irreparable injury.[4]

 The third element concerns substantial harm to other parties. With land,

it is difficult to envision how Washington Mutual or the estate would be substantially harmed, provided any interim expenses and losses are adequately covered by the posting of a supersedeas bond. *See, e.g., In re Burkett,* 279 B.R. at 817 (finding that movant failed to satisfy the third element because the movant proposed a supersedeas bond in an amount insufficient to compensate the estate for expenses it would incur during the pendency of the appeal). Thus, the issue with respect to this element is not so much whether other parties will suffer substantial harm, but whether such harm can be addressed by a supersedeas bond and whether the movant can and will post such a bond. *See id.*

 The final element—public interest—usually plays a prominent role when the court's judgment involves public rights, or the private rights of many individuals. *See, e.g., Arnold,* 278 F.3d at 441–42 (examining federalism, comity, and judicial economy in deciding whether to stay order concerning consolidation of mass asbestos claims in bankruptcy). It is difficult to envision any public interests involved in the present case as this case merely involves the private rights of two claimants to property.

Given the legal issues involved, and the likelihood that the Culwells will lose an opportunity to obtain appellate review of this court's decision if not stayed, the court concludes that the Culwells have sufficiently satisfied the four element test to autho-

---

purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.
11 U.S.C. § 363(m) (2002).

**4.** Washington Mutual's counsel suggested, as an alternative, that the court direct retention of the sales proceeds by the Trustee. Had the Culwells sought damages as alternative relief,

this may indeed solve the problem. *See Turner v. Citizens Nat'l Bank of Hammond (In re Turner),* 207 B.R. 373, 376 (2d Cir. BAP 1997) (finding no irreparable injury to debtor who requested stay pending appeal of foreclosure order on debtor's homestead, where debtor's proposed Chapter 13 plan intended to sell the homestead as part of reorganization anyway). However, as explained above, the Culwells did not seek monetary relief.

rize a stay, provided a bond is posted to protect Washington Mutual pending appeal.

■ The next issue, therefore, is to determine the amount of bond needed to adequately protect Washington Mutual.[5] *See In re Burkett,* 279 B.R. at 817 (finding that posting sufficient supersedeas bond was the only way to compensate the non-appellant for its costs during the pendency of the appeal). Specifically, the Fifth Circuit has held that a bankruptcy court may condition its order authorizing sale on the posting of a supersedeas bond. *See Bleaufontaine Inc. v. Roland Int'l (In the Matter of Bleaufontaine Inc.),* 634 F.2d 1383, 1389–90 (5th Cir. Unit B January 1981). *See also In re Smoldt,* 68 B.R. 533 (Bankr. N.D.Iowa 1986).

■ The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal. *See Poplar Grove Planting and Ref. Co., Inc.,* 600 F.2d at 1190–91. "[T]he bond secures the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal." *Id.* at 1191. In deciding how best to secure the non-appealing party from loss, the court applies general equitable principles. *See, e.g., Miami Int'l Realty Co. v. Paynter,* 807 F.2d 871, 873 (10th Cir.1986).

■ The Fifth Circuit has focused these general principles into a formula for setting the amount of a supersedeas bond. Unless the court finds otherwise, the amount of the supersedeas bond should "include the whole amount of the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay." *Poplar Grove Planting and Ref. Co. Inc.,* 600 F.2d at 1191 (looking to Civil Rule 73(d), the predecessor to Rule 62(d), for guidance on appropriate measure of supersedeas bond). Somewhat instructive are the local district court rules for the Northern District of Texas, which state: "[u]nless otherwise ordered by the presiding judge, a supersedeas bond staying execution of a money judgment shall be in the amount of the judgment, plus 20% of that amount to cover interest and any award of damages for delay, plus $250.00 to cover costs." *N.D.Tex.L.R.* 62.1.

■ The situation is different when the judgment res is non monetary, as in the case of real property. The fact that the judgment concerns real property does not relieve the appealing party of the burden to provide a supersedeas bond or its equivalent. *See United States v. Route 7, Box 7091, Chatsworth Ga.,* 1997 WL 412477 *2 (N.D.Ga.1997), aff'd, 117 F.3d 1433 (11th Cir.1997). However, the value of the property is not considered the "amount of the judgment" and is not included in the amount of the supersedeas bond. *See A & B Steel Shearing & Processing Inc. v. United States,* 174 F.R.D. 65, 71 (E.D.Mich.1997) (granting stay but deny-

---

**5.** The court notes that Rule 8005 does not condition a stay pending appeal on the posting of a supersedeas bond, stating only that the court may stay its judgment "on such terms as will protect the rights of all the parties in interest." Fed.R.Bankr P. 8005. Some courts have held, therefore, that a supersedeas bond is not required by Rule 8005, subject to the court's discretion. *See In re Byrd,* 172 B.R. 970, 974 (Bankr.W.D.Wash. 1994); *In re Westwood Plaza Apartments Ltd.,* 150 B.R. at 169. "Rule 8005 is by its design a flexible tool which permits a bankruptcy court to uniquely tailor relief to the circumstances of the case, so that the appellate process will neither undo nor overwhelm the administration of the bankruptcy case." *Gleasman v. Jones, Day, Reavis & Pogue (In re Gleasman),* 111 B.R. 595, 599 (Bankr. W.D.Tex.1990). *Accord Poplar Grove Planting and Ref. Co. Inc. v. Bache Halsey Stuart Inc.,* 600 F.2d 1189, 1191 (5th Cir.1979) (acknowledging that court may depart from the usual requirement of a full supersedeas bond).

ing request for supersedeas bond for the value of the property); *Metz v. United States,* 130 F.R.D. 458, 458 (D.Kan.1990); *In re Burkett,* 279 B.R. at 817; *Gleasman,* 111 B.R. at 604 ("The court rejects Franklin's contention that a bond equal to the stipulated value of the property is required. The purpose of a bond, after all, is to protect Franklin against *loss,* not to confer a windfall"). *See also* Former Civil Rule 73(d) (omitting value of property in calculation of bond: "[w]hen the judgment determines the disposition of the property in controversy as in real actions, replevin, and actions to foreclosure mortgages ... the amount of the supersedeas bond shall be fixed at such sum only as will secure the amount recovered for the use and detention of the property, the costs of the action, costs on appeal, interest and damages for delay").

Those courts that have considered the proper amount for a supersedeas bond when the judgment res is real property generally look to the following factors: (1) the time value of the property, i.e. appellant must compensate non-appealing party for the rental value of the property during the pendency of the appeal, or the time value of the money that the property represents if the property is to be sold; (2) the diminution in value or destruction of the property, i.e. appellant must provide adequate insurance for property or compensate non-appellant for such insurance; (3) the costs the non-appellant will incur for the appeal (apparently excluding attorney's fees); (4) the ad valorem taxes on the property; (5) any other expenses the non-appellant will incur as a result of the time delay of the appeal. *See Metz,* 130 F.R.D. at 459–60 (including $500 for costs of appeal, two years of rental value of property, ad valorem taxes during appeal, and casualty and fire insurance during appeal in calculating the amount of the supersedeas bond); *In re Gleasman,* 111 B.R. at 603–04 (including potential diminu-

tion in value of the real property and the time value of the property in calculating amount of bond); *In re Burkett,* 279 B.R. at 817 (listing insurance, time value of property, and non-appellant's costs on appeal in setting the amount of the bond).

Thus, Washington Mutual must be protected for the ad valorem taxes the court anticipates will be incurred during the pendency of the appeal, the time value of the money that the property would sell for and that Washington Mutual could then use, and the insurance that Washington Mutual will pay on the property during the pendency of the appeal. The bond need not cover ad valorem taxes for previous years. However, penalties which continue to accrue on the past due ad valorem taxes should be considered.

The parties agree that the property has a value of approximately $75,000. Washington Mutual requested an interest factor of 10% on this amount. The evidence reflects that ad valorem taxes for 2000 and 2001 are $12,396.65, and insurance for one year is approximately $6,200. Washington Mutual argued that it should also be covered for personal property taxes. The court fails to see the basis for this, however. The court assumes Washington Mutual's debt, as secured by the real property, well exceeds the value of the real property. The trustee will not realize excess funds from a sale to allow payment of the personal property taxes.

The final issue is whether this court's stay pending appeal applies throughout the appellate process, and whether this court's stay effectively stays the judgments of higher courts. One old case held that, if the appellate court neither modifies not vacates the stay granted by the district court, the stay continues in effect. *Staffords v. King,* 90 F. 136, 141–42 (4th Cir. 1898).

However, more recent opinions suggest otherwise. An opinion from the Court of

International Trade recognized that the district court may stay enforcement of its judgment while the appellate mandate is on appeal to the Supreme Court, but that, "absent extraordinary circumstances, the court of appeals is [normally] the appropriate forum to hear the application." *Cementos Guadalajara S.A. v. United States,* 727 F.Supp. 614, 618–19 (Ct. Int'l Trade 1989). Similarly, district courts hold that they are without power to stay their judgments after the court of appeals has issued a mandate and while the mandate is appealed to the Supreme Court. *See Harris v. City of Va. Beach, Va.,* 923 F.Supp. 869, 872–73 (E.D.Va.1996) (denying motion to stay judgment pending appeal to the Supreme Court because such stay "may be granted by the judge of the court rendering the judgment or decree or by a justice of the Supreme Court ... Accordingly, the Court holds that it is without authority to stay the mandate"); *Brinkman v. Department of Corr. of the State of Kan.,* 857 F.Supp. 775, 776–77 (D.Kan.1994) ("the district court retains the authority throughout the pendency of the appeal to stay its judgment [ ] but, upon issuance of the mandate, loses the power to stay the judgment." Event though the court of appeals affirmed the district court, the district court held that "[w]ith the issuance of the mandate, the prior stay dissolved and this court regained jurisdiction of the case for the purpose of enforcing the judgment. This court lacks jurisdiction to stay the Tenth Circuit's mandate, and the defendant apparently has not obtained a stay from the Tenth Circuit or a justice of the Supreme Court").

In the only bankruptcy opinion on point, the bankruptcy court held that it was without authority to extend its stay past the appeal in the district court. *See Lindner & Assocs. v. Richards (In re Richards),* 241 B.R. 769, 775–76 (Bankr.D.D.C.1999). While that court recognized that "approv-ing the supersedeas as staying collection during the appeal to the court of appeals is not inconsistent ... nor does it interfere with the district court's jurisdiction," the court stated that it would not approve such a supersedeas because of "the need for a clear-cut rule applicable to all cases, and the need for deference to the district court as the appellate court." *Id.* at 776. The court therefore held that it "lack[ed] authority to issue a stay of its affirmed judgment pending an appeal to the court of appeals; the district court and the court of appeals are the appropriate courts from which to seek a stay" under Rule 8017. *Id.* at 770.

### Conclusion

Upon the foregoing, the court concludes that a stay pending appeal to the district court is proper upon the posting of a supersedeas bond by the Culwells. The court finds that a bond in the amount of $20,000.00 will protect Washington Mutual pending appeal to the district court. The court will prepare an order.